UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VINCENT SQUEO AND
FELICIA SQUEO,

    *Plaintiffs,*

    *v.*                                       Case No: 2:25-cv-1180

CITY OF LAKE GENEVA AND
MICHAEL MCBRIDE,

    *Defendants.*

---

## COMPLAINT

---

Plaintiffs Vincent and Felicia Squeo, by their attorneys, Strang Bradley, LLC, for their complaint against Defendants, state:

### INTRODUCTION

1. This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Vincent and Felicia Squeo's constitutional right to be free from unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution.

2. At about 11:18 P.M. on December 13, 2024, City of Lake Geneva Police Officer Michael McBride entered the Squeo home, seized Vincent, and arrested him without a warrant or an exception to the warrant requirement.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C. § 1391(b)(2). Defendant City of Lake Geneva is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

5. Plaintiffs Vincent and Felicia Squeo are a married couple who reside in Walworth County, Wisconsin. During the period discussed in this complaint, they were engaged.

6. Defendant City of Lake Geneva is a political subdivision of the state of Wisconsin and is or was the employer of Defendant McBride and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

7. Defendant Michael McBride was, at the time of this occurrence, employed as a police officer for the City of Lake Geneva Police Department.

8. At all times Defendant McBride interacted with Plaintiffs on December 13 and 14, 2024, McBride was on duty, acting under the color of state law, ordinance, and regulation.

9. At all times Defendant McBride interacted with Plaintiffs on December 13 and 14, 2024, McBride acted within the scope of his employment with the City of Lake Geneva.

## FACTS

10. In October 2024, Vincent and Felicia welcomed Felicia's brother, Christian, into their home.

11. Christian was down on his luck and out of money. His parents had kicked him out of their home.

12. While living with Vincent and Felicia, Christian eventually found a job, but he spent the majority of his money on alcohol.

13. On December 13, this caused a dispute between Vincent and Christian after Christian, who was drunk, pretended to deposit money into an ATM and then hit Vincent in the face.

14. Law enforcement became involved after Christian, who was very intoxicated, waved down an ambulance.

15. Officer McBride arrived to investigate.

16. Felicia explained the situation to Defendant McBride, whose body-worn camera recorded the conversation.

17. When Christian received his first paycheck, he used part of it to pay rent to Vincent and Felicia. Felicia implored Christian to save the rest of it, but he spent it on alcohol.

18. Christian also spent most of his second paycheck on alcohol.

19. Vincent and Felicia kept encouraging Christian to save his money.

20. After Christian cashed another paycheck and arrived home drunk, Felicia and Vincent told him they would take him to Kwik Trip so he could deposit some of the money into Christian's savings account.

21. At Kwik Trip, Christian pretended to access his account on the ATM by "fake pressing buttons."

22. On the way back from the gas station, Christian and Vincent continued to argue. While Vincent was driving, Christian hit him in the face, breaking his glasses and giving him a bloody nose.

23. Vincent, defending himself while driving, hit Christian back.

24. As they approached the Squeo home, Christian jumped out of the car while it was still moving, injuring himself.

25. Once back outside the home, Christian pushed Felicia.

26. After Felicia explained what happened to McBride, McBride stopped by the ambulance to check in with officers and EMTs about Christian.

27. The officers switched their body-worn cameras to "blue" for this conversation, meaning they muted themselves.

28. But just before, an officer had been talking to Christian in the ambulance.

29. Christian, who was very intoxicated (but only admitted to being "tipsy"), had trouble explaining himself.

30. An EMT told the officer that Christian had previously said that his sister's fiancé had hit him in the head.

31. The officer who spoke to McBride would later describe Christian as "tanked."

32. Defendant McBride then went to the Squeo home to obtain a statement from Vincent. This was also captured on his body-worn camera.

33. At the home, Felicia opened the door, stepped outside, and told McBride that Vincent did not want to give a statement.

34. McBride continued to talk to Felicia, and Vincent, standing behind Felicia in the house, told Felicia to come back inside.

35. McBride then became upset.

36. McBride then said, "So here's the deal. This is considered a domestic in Wisconsin. I have to take someone to jail."

37. This did not persuade Vincent to come outside.

38. McBride then ordered Vincent to come outside and talk.

39. Vincent declined.

40. McBride then told Vincent, "I'm going to put you in handcuffs right now."

41. Vincent told him no.

42. Felicia told McBride, "No, stop, sir."

43. Felicia then took a step back, past the threshold, into her house.

44. She repeated to McBride, "Please stop."

45. McBride then pushed Felicia aside and entered the home.

46. Vincent and Felicia continued to tell McBride to stop and that he wasn't welcome in the home.

47. McBride then grabbed Vincent, as Vincent repeatedly said, "You're not allowed in our house!"

48. Vincent told McBride, "Get out!"

49. McBride told Vincent, "I'm investigating!"

50. Vincent continued to tell McBride he wasn't allowed in the home.

51. Felicia stepped between McBride and Vincent and asked McBride, "Sir, can I talk to you outside?"

52. McBride radioed for backup.

53. Felicia told McBride, "You can't just handcuff him."

54. McBride told Felicia, "I hear you. I'm investigating a crime, alright? [Vincent] was assaulted [by] someone who lives with him."

55. Vincent continued to tell McBride to leave.

56. Vincent told McBride that McBride was violating his rights and he would bring a lawsuit against him.

57. Another officer arrived, and the two officers grabbed, handcuffed, and arrested Vincent in his own home, without a warrant, consent, or an exception to the warrant requirement.

58. Vincent declined to give a statement.

59. After Vincent was handcuffed and locked in a squad car, McBride walked back over to Felicia.

60. McBride told her, "[Christian] gets punched by your fiancé here, right? I have to investigate it. That's why I can go in your house and do all that, okay?"

61. McBride admitted to Felicia that he believed Christian was the instigator.

62. McBride also told Felicia that he thought Vincent was being a "jerk."

63. McBride, a little later, told another officer he thought Vincent was the victim.

64. McBride wrote in his report that he "eventually determined that Christian was the aggressor."

65. McBride nevertheless claims to have determined that Vincent was a threat to himself and others.

66. This determination ensured that Vincent would not be released from jail after booking.

67. McBride made that determination because Vincent had exercised his constitutional rights by telling McBride he wasn't allowed in his home, yelling at McBride to leave, declining to speak with McBride about the incident with Christian, and telling McBride he would file a lawsuit against him.

68. Vincent remained in jail from the time he was arrested on Friday night until Monday morning.

69. Vincent was never charged with assaulting Christian.

70. Vincent was charged with Resisting or Obstructing an Officer for his actions after the officer unlawfully entered his home, even though Defendant McBride was acting without lawful authority.

71. McBride never informed the Walworth County District Attorney that he had seized Vincent Squeo without lawful authority.

72. Those charges were dismissed as part of a plea deal after Vincent filed a motion to suppress.

73. As part of the plea deal, a Walworth County Assistant District Attorney formally agreed that McBride had violated Vincent's Fourth Amendment rights.

## COUNT 1:
## 42 U.S.C. § 1983 Claim for Unlawful Home Entry

74. Plaintiffs reallege the above paragraphs.

75. The actions, taken under color of law, of Defendant McBride in entering Plaintiffs' home without consent, a warrant, or an exception to the warrant requirement, were unreasonable in violation of the Fourth Amendment. McBride is thus liable under 42 U.S.C. § 1983.

76. As a direct and proximate result of Defendant McBride's unlawful actions, Vincent and Felicia Squeo suffered damages, including loss of liberty, emotional distress, invasion of privacy, and physical pain and suffering.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiffs demand actual or compensatory damages against McBride and, because he acted in reckless disregard for Plaintiffs' rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 2:
## 42 U.S.C. § 1983 Claim for Unlawful Seizure Inside Home

77. Plaintiffs reallege the above paragraphs.

78. Defendant McBride, under color of law, seized Plaintiff Vincent Squeo in his home without consent, without a warrant, and without an exception to the warrant

requirement in violation of the Fourth Amendment. McBride is thus liable under 42 U.S.C. § 1983.

79. As a direct and proximate result of Defendant McBride's unlawful actions, Vincent Squeo suffered damages including loss of liberty, emotional distress, invasion of privacy, and physical pain and suffering.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiffs demand actual or compensatory damages against McBride and, because he acted in reckless disregard for Plaintiffs' rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 3:
## 42 U.S.C. § 1983 Claim for Unlawful Arrest

80. Plaintiffs reallege the above paragraphs.

81. Defendant McBride, under color of law, arrested Plaintiff Vincent Squeo without probable cause.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiffs demand actual or compensatory damages against McBride and, because he acted in reckless disregard for Plaintiffs' rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 4:
## 42 U.S.C. § 1983 Claim for Retaliation

82. Plaintiffs reallege the above paragraphs.

83. Defendant McBride, under color of law, retaliated against Plaintiff Vincent Squeo for exercising his constitutional rights to be free from unreasonable seizure, to criticize police, to bring lawsuits, and to be silent.

84. Plaintiff Vincent Squeo told McBride that McBride was not allowed in his home, that he had violated his rights, and that he was going to bring a lawsuit against him.

85. Although McBride arrested Vincent Squeo only for a misdemeanor, McBride checked a box on a notice of arrest form, indicating that Vincent should not be released because the "accused appears to represent a danger of harm to him[]self, another person or property."

86. McBride had already determined that Vincent was not the aggressor. He checked that box in retaliation, to ensure that Vincent would remain in jail.

87. Due to McBride's retaliation, Vincent Squeo remained in jail for multiple nights.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiffs demand actual or compensatory damages against McBride and, because he acted in reckless disregard for Plaintiffs' rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

### COUNT 5:
### 42 U.S.C. § 1983 for Fourth Amendment Malicious Prosecution

88. Plaintiffs reallege the above paragraphs.

89. Defendant McBride, under color of law, with malicious motive, brought criminal charges against Vincent Squeo without probable cause.

90. Defendant McBride seized Vincent Squeo, and Vincent was detained as a result.

91. The prosecution of Vincent Squeo terminated in Vincent's favor.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiffs demand actual or compensatory damages against McBride and, because he acted in reckless disregard for Plaintiffs' rights, punitive damages, plus the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 6:
### Indemnification Claim Against City of Lake Geneva

92. Plaintiffs reallege the above paragraphs.

93. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable, for acts within the scope of their employment.

94. At all times relevant to this action, Defendant McBride engaged in the conduct complained of while he was on duty and in the course and scope of his employment with the City of Lake Geneva.

WHEREFORE, Plaintiffs ask this Court to find that the City of Lake Geneva is liable to defend this action against Defendant McBride and to satisfy any judgment entered against him, by virtue of WIS. STAT. § 895.46.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury, pursuant to FED. R. CIV. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 7 August 2025,

                                             STRANG BRADLEY, LLC
                                             Attorneys for Plaintiffs

                                             /s/ R. Rick Resch
                                             John H. Bradley
                                                Wisconsin Bar No. 1053124
                                             R. Rick Resch
                                                Wisconsin Bar No. 1117722
                                             William E. Grau
                                                Wisconsin Bar No. 1117724
                                             STRANG BRADLEY, LLC
                                             613 Williamson St., Suite 204
                                             Madison, WI 53703
                                             (608) 535-1550
                                             John@StrangBradley.com
                                             Rick@StrangBradley.com
                                             William@StrangBradley.com